## FISHER VS. PENNSYLVANIA COMPANY.

A fence erected by a railroad company within its right of way, as shown by the condemnation proceedings, to prevent cattle trespassing, does not form a consentable line to define the boundary.

Error to Common Pleas No. 2, of Allegheny County. No. 111 October and November Term, 1885.

This was an action of trespass brought by William Fisher against Jesse Dunlap et al., for taking down a wire fence which was claimed by plaintiff to be on his land. Afterwards the Pennsylvania Company, operating the Pittsburg, Fort Wayne & Chicago Railway, was substituted as defendant.

The charge of the Court was as follows, per

EWING, J. :

This action is one of trespass brought to recover damages for tearing down a fence claimed to be on the land of Mr. Fisher. Undoubtedly it was on his land, that is he owns the fee of all the land that the railraod is on, subject to the rights of the railroad, just as a man owns the fee to the land where a public road passes through his farm. He still owns the fee across the road. It seems that Mr. Fisher purchased this land in 1869, and he gets title through various parties, the original title coming from Mr. John Mitchell, who was on the witness stand. He owned it when the railroad was opened and built through it. The deed of Mr. Fisher on its face excepts from the grant the right of way of the railroad, and was notice to

him to ascertain what that right of way was. If there was no record of a proceeding for condemnation, the right of way would be presumably that which is marked on the ground, which he might see. But there was a record of a proceeding that he could go and examine and of which he was bound to take notice. Now, if we had stopped with the plaintiff's testimony alone, showing that a fence had been running along the north line of the tracks and was standing there for some considerable time, built by either party—if there was no evidence as to any right of way beyond that, we would have said that that was presumptive evidence, standing alone, that that was the line of the right of way. But we have other testimony in the case. The Ohio and Pennsylvania Railroad, having authority to appropriate land for its right of way, did in accordance with the Acts of Assembly, apply to a Court of competent jurisdiction, the then Court of Common Pleas of Allegheny County, alleging that it had appropriated as necessary to its use under the statute, among others, a certain piece of property running through Mr. Mitchell's land. The Court had jurisdiction—was bound by the statute to take jurisdiction and it did, and appointed viewers who acted, made their report and fixed the amount of damages which were paid to Mitchell. Now we have told you, in answer to points of counsel, that that is a conclusive adjudication, that so much ground as was set forth in the proceeding was necessary for the use of the road. This Court and jury cannot go beyond it. We have no right to pass on the question as to whether it was more or less than they needed. That has been settled by our predecessors.

Then the next question that we have instructed you on is whether, where land has been appropriated by a proceeding in Court in that way for a railroad, the company may not lose its right to some portion of the land appropriated that is not in use. If there is a hostile occupation for more than twenty-one years, it may be that the party occupying it could hold it against the railroad company as he could against other parties; but to enable him to hold it in there must be an open, notorious, hostile, exclusive and continuous possession for twenty-one years. [Now the evidence does not show that. It does

not show a case that would entitle Mr. Fisher to recover on his holding twenty-one years, or to defend on it] and, therefore, we come back to the question as to whether or not this land was in the appropriation of the right of way, and was taken by the proceeding in the Court of Common Pleas in 1850. That will be the question of fact for you to determine. There was no evidence by any person who was present at its original location as to where the centre line of the railroad is. You will recollect the description on the appropriation plot describes it as "beginning at the centre line of the railroad" at the line between Mitchell and Dawson, that is the eastern line—the line this way; Dawson's property being on this side, and Merriman's on the other side of Mitchell's property. It commences at the centre line of the right of way and runs thence along that line sixty feet from the centre line. Now that centre line must be taken from the descriptions. We have, however, the general centre line of the road, that is the centre line of the appropriation of the right of way.

[The Court here with plot in hand describes the boundary lines.]

Now, I take it, if there was no evidence as to where the centre line of the right of way was located on the ground you would determine it by going on the ground and determine it as to the centre line between the two tracks. That, in the absence of evidence would presumably be where the centre line would be located. Two witnesses say that they know where the centre line is. Mr. Kelch, by having been on the road in an official capacity as surveyor, and section boss soon after the road was built, and then the engineer says he knows from the general survey and marks. By the way Mr. Kelch says that in his time the marks for the centre line and pegs were there. They both agree that the centre line of that road would be about 15 feet south of this fence in dispute. If it is, as they say, the fence was very considerably within the right of way, and if the railroad company tore it down for their railroad purposes, the plaintiff is not entitled to recover in this case. If it was not on the right of way as appropriated in the proceedings, then he would be entitled to recover.

You will bear in mind that we are not called on this case

to decide the question as to the extreme limit of that right of way. It looks as though there would be a dispute hereafter as to where it went, no difference how this case is decided. The only question you have to decide is as to whether or not this fence that was torn down, was within the right of way, as appropriated in the proceedings. If it was, your verdict should be for the defendants. If it was not, your verdict should be for the plaintiff for the injury done.

---

Plaintiff's counsel respectfully request the Court to charge:

First. That under the Acts of Assembly of the State of Ohio, offered in evidence by the plaintiff, and under which it is claimed, the location of the right of way in this case was made, the Ohio & Pennsylvania Railroad Company had power to appropriate and condemn for its right of way, for the use of said company, so much land as was necessary for the purpose of constructing a single or double track, and no more, unless for depot purposes, switches, &c.

Answer. The first point is refused.

The proceedings in the Court of Common Pleas given in evidence is a conclusive adjudication of the right of the company to appropriate the land of John Mitchell, described in the plot and proceedings as necessary for the purposes of the location and operation of their railroad.

Second. If the jury find from the evidence, that the defendant company, on or about 1851, or prior thereto, located their road through the land in dispute, and defined the line of their right of way on the ground by a permanent fence, and that the said fence was recognized and treated by both parties as the line designating said boundary for over twenty-five years; that then the same is to be taken as the true line between the parties.

Answer. The second point is refused; the evidence does not show such a possession by plaintiff, William Fisher and those under whom he claims as would enable him to claim and hold the possession as against the railroad company, claiming to exercise its right to use the same for its railroad within the

lines of the appropriation as set forth and defined in the proceedings in the Court of Common Pleas in evidence.

· The Court is respectfully requested to charge the jury on part of the defendant:

First. That the proceedings at No. 150, June Term, 1850, vested a right of way in the company's predecessor, the Ohio & Pennsylvania Railroad Company, as therein described, and constituted notice of that fact to Fisher, the plaintiff, so that his deed in evidence conveyed to him title only subject to said right of way.

Answer. First point affirmed.

Second. Said ground when condemned became a public highway and no right thereto or to any part thereof as against the railroad company could be acquired by the plaintiff by the occupation thereof.

Answer. The answer to plaintiff's second point renders it unnecessary to decide the question involved in this point.

Third. The plaintiff has not shown any such title to the *locus in quo* as entitles him to recover.

Answer. Refused. It is for the jury to find where the right of way is located.

––––––––––

The jury rendered a verdict for defendant, and Fisher then took a writ of error, complaining of the answers to the first and second points of plaintiff and the portion of the charge in brackets, and the action of the Court·in not submitting the question of a consentable line to the jury.

*Messrs. Barton and Sons*, for plaintiff in error, argued that the Act of April 11, 1848, P. L. 1849, page 754, gave this company the right to appropriate enough land for a single or double track, and having put up a fence, the question whether that was a consentable line should be left to the jury; Perkins vs. Gay, 3 S. & R., 329 ; Hagey vs. Detweiler, 35 Pa., 409 ; Kellum vs. Smith, 65 Pa., 86.

*Messrs. Hampton & Dalzell, contra*, argued that where title by possession is claimed by a grantor against his grantee, it must be open, hostile and notorious ; Jackson vs. Burton, 1

Wendel, 341 ; Doe vs. Butler, 3 Wend., 149 ; Jeffersonville R. R. Co. vs. Oyler, 5 Am. and Eng. R. R. Cases, 397. The plot of right of way showing the extent of land condemned was conclusive. The evidence of a consentable line was not sufficient; Kerr vs. Wright, 37 Pa., 197 ; Perkins vs. Gay, 3 S. & R., 327.

The Supreme Court affirmed the judgment of the Common Pleas on January 4th, 1886, in the following opinion:

Per Curiam:

We discover no error in this record. The land on which the fence stood was properly appropriated by the railroad company according to law. The fence was not a continuous one to mark any designated boundary. It was merely disconnected portions to prevent cattle from trespassing on the track. It was not, in any sense, a consentable line to define the boundary line between the company and the adjoining owner.

Judgment affirmed.